IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **LORAINE MARIE SHERMOT,** : | |
| Plaintiff, : | |
| : | |
| v. : | **CIVIL ACTION NO. 20-CV-2719** |
| : | |
| **JAMES M. BUCCI,** *et al.*, : | |
| Defendants. : | |

## MEMORANDUM

**GALLAGHER, J.**                                                                                      **JUNE 30, 2020**

Loraine Marie Shermot filed this civil action against a state judge, several individuals who served as her guardian through the ARC Alliance ("ARC"), an attorney for ARC, and an attorney appointed to represent her at a hearing in state court. She seeks leave to proceed *in forma pauperis*. The Court will grant Shermot leave to proceed *in forma pauperis* and dismiss her Complaint because she has not alleged a plausible basis for a claim under 42 U.S.C. § 1983 and the Court lacks subject matter jurisdiction over any state claims she may be pursuing. However, Shermot will be given leave to file an amended complaint as to certain claims.

**I.      FACTUAL ALLEGATIONS**

Shermot names the following individuals as Defendants: (1) Judge James M. Bucci; (2) Rebecca L. Bell; (3) Robert Louis Feliciani; (4) Iesha Colon; (5) Monica I. Wiggins; (6) Tatiana Foronda; and (7) Ruschell Turner. Defendants Colon, Wiggins, Foronda, and Turner (collectively, "ARC Guardians") are ARC employees who all appear to have served as Shermot's guardian at some point, or who were involved in decisions made by ARC regarding Shermot's finances and other matters. Defendant Feliciani is identified as an attorney for ARC,

1

while Defendant Bell appears to be an attorney appointed to represent Shermot at proceedings before Judge Bucci in Orphans Court in Berks County that took place in January 2020.

In 2016, ARC was appointed to serve as guardians for Shermot and her brother. (*See* Compl. ECF No. 2 at 47 (referring to court appointment of ARC); *see also id.* at 14-15 & 54 (referring to a 2016 hearing).)[1] The basis for Shermot's claims is her dissatisfaction with the performance of the ARC Guardians and the guardianship itself. She claims the ARC Guardians mishandled her and her brother's affairs and finances in various respects and criticizes them for authorizing the sale of her family home. (*See, e.g.*, *id.* at 7, 19, 31, 35-36, 46, 48, 55.) Shermot also alleges that she and her brother were at times rendered homeless as a result of the ARC Guardians' negligence (*see, e.g.*, *id.* at 24 & 34), and that she was moved to a nursing home over her objections (*see, e.g.*, *id.* at 27 & 71).

The Complaint refers to a January 28, 2020 hearing in the Orphans Court division of the Berks County Court of Common Pleas during which Judge Bucci adjudicated matters concerning Shermot. (*Id.* at 4.) It appears Defendant Bell was appointed to represent Shermot at the hearing. Shermot told Judge Bucci she "did not want [Bell] as [her] lawyer because [Bell] is totally against [her] and not on [her] side," (*id.*), but Judge Bucci proceeded with the hearing despite Shermot's objection. (*Id.* at 5.) The Complaint indicates that Defendant Feliciani represented ARC at the hearing, and that he told the court Shermot could not take care of herself, a representation with which Shermot disagrees. (*Id.* at 4 & 6; *see also id.* at 59.) Although Shermot does not specify the nature of the hearing, it appears from context that it concerned the sale of Shermot's family home and ARC's efforts to relocate Shermot and her brother to a nursing home. (*Id.* at 51.)

---

[1] The Court adopts the pagination supplied by the CM/ECF docketing system.

Shermot alleges that the hearing was unfair, (*id.* at 77), and that it violated her constitutional, civil, and human rights. (*Id.* at 2 & 5.) She further alleges that the Defendants' actions caused emotional stress and defamed her and caused her brother to have a stroke.[2] (*Id.* at 5.) Shermot seeks $10 million in damages. (*Id.*) She also appears to be seeking termination of the guardianship. (*Id.* at 77-78.) Shermot submitted additional allegations, which were docketed as "exhibits" in which she contends that the family home went into foreclosure because ARC did not help her with her estate. (ECF No. 5 at 1.)

## II.     STANDARD OF REVIEW

The Court will grant Shermot leave to proceed *in forma pauperis* because it appears that she is not capable of paying the fees to commence this civil action. Accordingly, the Complaint is subject to 28 U.S.C. § 1915(e)(2)(B)(ii), which requires the Court to dismiss the Complaint if it fails to state a claim. Whether a complaint fails to state a claim under § 1915(e)(2)(B)(ii) is governed by the same standard applicable to motions to dismiss under Federal Rule of Civil Procedure 12(b)(6), *see Tourscher v. McCullough*, 184 F.3d 236, 240 (3d Cir. 1999), which requires the Court to determine whether the complaint contains "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotations omitted). "[M]ere conclusory statements do not suffice." *Id.* Moreover, "if the court determines at any time that it lacks subject-matter jurisdiction, the court

---

[2] Throughout her Complaint, Shermot discusses how the ARC Guardians wronged both her and her brother. To the extent Shermot intended to bring claims on her brother's behalf, she lacks standing to pursue those claims. *See Twp. of Lyndhurst, N.J. v. Priceline.com Inc.*, 657 F.3d 148, 154 (3d Cir. 2011) ("[A] plaintiff must assert his or her own legal interests rather than those of a third party" to have standing to bring a claim (quotations omitted)); *see also Osei-Afriyie ex rel. Osei-Afriyie v. Med. Coll. of Pa.*, 937 F.2d 876, 882-83 (3d Cir. 1991) (a pro se litigant who is not an attorney may not pursue claims on behalf of anyone other than himself including his child). The Court will therefore dismiss without prejudice any claims raised on behalf of Shermot's brother.

must dismiss the action." Fed. R. Civ. P. 12(h)(3).  As Shermot is proceeding *pro se*, the Court construes her allegations liberally.  *Higgs v. Att'y Gen.*, 655 F.3d 333, 339 (3d Cir. 2011).

### III.   DISCUSSION

#### A.  *Rooker-Feldman* Doctrine

At times, Shermot appears to be challenging the state court's 2016 guardianship order and seeking relief from that judgment.  *See* ECF No. 2 at 62 (alleging that the guardianship order was based on lies and is "unjust" and "wrong"), 74 (alleging that the "Guardians & their lawyer have failed in their duties & should have been terminated long ago"), 77 (stating that Shermot and her brother "want termination of the guardians and the guardianship"), and 81 ("The Court had no right to claim me incompetent because the electric being shut off and we fell on hard times.").  Pursuant to the *Rooker-Feldman* doctrine, "federal district courts lack jurisdiction over suits that are essentially appeals from state-court judgments." *Great W. Mining & Mineral Co. v. Fox Rothschild LLP*, 615 F.3d 159, 165 (3d Cir. 2010).  "[T]here are four requirements that must be met for the *Rooker-Feldman* doctrine to apply: (1) the federal plaintiff lost in state court; (2) the plaintiff complains of injuries caused by the state-court judgments; (3) those judgments were rendered before the federal suit was filed; and (4) the plaintiff is inviting the district court to review and reject the state judgments." *Id.*  To the extent Shermot is complaining of injuries caused by the state court's guardianship order, which appears to be effectively final,[3] and seeking review and reversal of that judgment, the *Rooker-Feldman* doctrine precludes this Court

---

[3] Although unclear, the Complaint suggests that Shermot challenged the order but was unsuccessful.  Given that allegation, and Shermot's allegations reflecting ARC has been her guardian for years, it is reasonable to infer that the guardianship order is effectively final.  *See Malhan v. Sec'y United States Dep't of State*, 938 F.3d 453, 460 (3d Cir. 2019) ("*Rooker-Feldman* does not apply when state proceedings have neither ended nor led to orders reviewable by the United States Supreme Court.").

from exercising jurisdiction over those aspects of her claims.  *See Stephens v. Kenney*, 802 F. App'x 715, 718 (3d Cir. 2020) (per curiam) (concluding that *Rooker-Feldman* doctrine barred "at least some aspect" of claims based on allegations that state judge improperly adjudicated plaintiff's father to be incapacitated, appointed a guardian, and approved sale of real property); *Hannivig v. Cty. of Lackawanna*, Civ. A. No. 16-1514, 2018 WL 3717135, at *3 (M.D. Pa. July 16, 2018) ("[T]o the extent that Mr. Hannivig seeks review of the final decree of the Lackawanna County Court of Common Pleas Orphans' Court Division adjudging him an incapacitated person, this Court does not have subject matter jurisdiction to review the Orphans' Court order."), *report and recommendation adopted*, Civ. A. No. 16-1514, 2018 WL 3715720 (M.D. Pa. Aug. 3, 2018).  However, as the majority of Shermot's claims seek relief for injuries that do not fall within the ambit of *Rooker-Feldman*, the Court will address those claims below.

### B.  Section 1983 Claims

Shermot is pursing constitutional claims pursuant to § 1983 for violation of her constitutional rights.  "To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law."  *West v. Atkins*, 487 U.S. 42, 48 (1988).  Shermot has not alleged a basis for proceeding against the named Defendants.

#### 1.  Claims Against Judge Bucci

Shermot's claims against Judge Bucci are barred by absolute judicial immunity.  Judges are entitled to absolute immunity from civil rights claims that are based on acts or omissions taken in their judicial capacity, so long as they do not act in the complete absence of all jurisdiction.  *See Stump v. Sparkman*, 435 U.S. 349, 355-56 (1978); *Harvey v. Loftus*, 505 F. App'x 87, 90 (3d Cir. 2012) (per curiam); *Azubuko v. Royal*, 443 F.3d 302, 303-04 (3d Cir.

2006) (per curiam).  An act is taken in a judge's judicial capacity if it is "a function normally performed by a judge."  *Gallas v. Supreme Ct. of Pa.*, 211 F.3d 760, 768 (3d Cir. 2000).  Moreover, "[g]enerally . . . 'where a court has some subject matter jurisdiction, there is sufficient jurisdiction for immunity purposes.'"  *Figueroa v. Blackburn*, 208 F.3d 435, 443-44 (3d Cir. 2000) (quoting *Barnes v. Winchell*, 105 F.3d 1111, 1122 (6th Cir. 1997)).  As Shermot's claims against Judge Bucci are based on acts taken in his judicial capacity, and as there is no plausible basis for concluding that Judge Bucci acted in the absence of all jurisdiction, Judge Bucci is entitled to absolute judicial immunity here.  *See, e.g., Stephen*, 802 F. App'x at 719 (allegations were insufficient to overcome judicial immunity where "[a]lthough [plaintiff] asserted that the actions of Judge Kenney and Register of Wills Maddaloni were 'nonjudicial,' he principally complained that the competency hearing, Letters Testamentary, and will contest adjudication were handled erroneously and fraudulently").

### 2.  Claims Against Attorneys

Shermot's claims against Bell, the attorney appointed to represent her at the January hearing, and Feliciani, ARC's attorney, are based primarily on how those attorneys represented their clients, particularly with regard to their conduct at the January hearing and statements they made to Judge Bucci.  Those claims fail because Bell and Feliciani are not state actors subject to liability under § 1983.

The Supreme Court has held that "a public defender does not act under color of state law when performing a lawyer's traditional functions as counsel to a defendant in a criminal proceeding."  *Polk Cty. v. Dodson*, 454 U.S. 312, 325 (1981) (footnote omitted).  That is because, although appointed by the state, public defenders are obligated to act in the best interests of their clients without regard to the "mission of the state."  *Id.* at 320.  Courts have

similarly concluded that other types of court-appointed attorneys are not state actors. *See, e.g., Goodson v. Maggi*, 797 F. Supp. 2d 624, 637 (W.D. Pa. 2011) ("Court appointed counsel, especially one serving as a guardian ad litem, does not qualify as a state actor for purposes of § 1983."). Additionally, private attorneys "performing their traditional functions will not be considered state actors solely on the basis of their position as officers of the court." *Angelico v. Lehigh Valley Hosp., Inc.*, 184 F.3d 268, 277 (3d Cir. 1999). Although joint action may result in a finding of state action, "merely resorting to the courts and being on the winning side of a lawsuit does not make a party a co-conspirator or a joint actor with the judge." *Dennis v. Sparks*, 449 U.S. 24, 28 (1980). For these reasons, neither Bell nor Feliciani are state actors subject to liability under § 1983. *See Stephens*, 802 F. App'x at 720 (conclusory allegations that guardian conspired with judge to deprive plaintiff of due process did not state a basis for state action); *Smith v. Albert Einstein Med. Ctr.*, 378 F. App'x 154, 157 (3d Cir. 2010) (per curiam) (district court correctly dismissed § 1983 claims based on allegations against an attorney who allegedly filed a "fraudulent petition" causing appointment of an "illegal" guardian); *Kennedy v. Glassman*, Civ. A. No. 11-51, 2011 WL 666248, at *3 (N.D. Fla. Feb. 14, 2011) (dismissing, pursuant to §1915, claims against attorneys who participated in guardianship proceeding because they were not state actors), *report and recommendation adopted*, Civ. A. No. 11-51, 2011 WL 1374983 (N.D. Fla. Apr. 12, 2011).

### 3. Claims Against ARC Guardians

Shermot's § 1983 claims against the ARC Guardians similarly fail because she has not alleged sufficient facts to support a plausible inference that they are state actors. Whether a defendant is acting under color of state law — i.e., whether the defendant is a state actor — depends on whether there is "such a close nexus between the State and the challenged action'

that seemingly private behavior may be fairly treated as that of the State itself." *Leshko v. Servis*, 423 F.3d 337, 339 (3d Cir. 2005) (internal quotations omitted). "To answer that question, [the United States Court of Appeals for the Third Circuit has] outlined three broad tests generated by Supreme Court jurisprudence to determine whether state action exists: (1) whether the private entity has exercised powers that are traditionally the exclusive prerogative of the state; (2) whether the private party has acted with the help of or in concert with state officials; and (3) whether the state has so far insinuated itself into a position of interdependence with the acting party that it must be recognized as a joint participant in the challenged activity." *Kach v. Hose*, 589 F.3d 626, 646 (3d Cir. 2009) (internal quotations and alteration omitted). "Action taken by private entities with the mere approval or acquiescence of the State is not state action." *Am. Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 52 (1999). Rather, to support a finding of state action, "the government must be 'responsible for the specific conduct of which the plaintiff complains.'" *Borrell v. Bloomsburg Univ.*, 870 F.3d 154, 160 (3d Cir. 2017) (quoting *Blum v. Yaretsky*, 457 U.S. 991, 1004 (1982)).

The Complaint does not allege sufficient facts to support a plausible inference that the ARC Guardians are state actors. ARC appears to be a private entity that provides guardianship and other services, so its employees are, likewise, apparently non-state actors. *The Arc Alliance*, https://thearcalliance.org/community-services/ ("The Arc Alliance is made up of five related corporations: The Arc Alliance, The Arc Alliance Advocacy Services, The Arc Alliance Children's Services, The Arc Alliance Guardianship Services, and The Arc Alliance Foundation.") (last visited June 26, 2020). Shermot's claims are predicated on her dissatisfaction with the ARC Guardians' management of her affairs, particularly the sale of her family home and her placement in a nursing home, for which they may have received court approval.

However, the fact that the ARC Guardians were appointed by the state court to serve as Shermot's guardian and appear to have resorted to the state court for approval of certain decisions, presumably pursuant to state statues, *see* 20 Pa. Cons. Stat. § 5501 *et seq.*, does not equate to a conclusion that the ARC Guardians are state actors.  *See Smith v. Wood*, 649 F. Supp. 901, 906 (E.D. Pa. 1986) (family members who invoked Pennsylvania's guardianship laws resulting in a ruling that plaintiff was incompetent to manage his estate were not state actors "[m]erely because a judicial determination was required"); *see also Runge v. Kelly*, Civ. A. No. 05-10849, 2006 WL 167497, at *2 (D. Mass. Jan. 23, 2006) (dismissing § 1983 claims against private attorney who procured order appointing him as plaintiff's guardian because "[a] private party's abuse of a valid state procedure does not . . . implicate state action").  Furthermore, as noted above, "merely resorting to the courts and being on the winning side of a lawsuit does not make a party a co-conspirator or a joint actor with the judge." *Dennis*, 449 U.S. at 28; *see also Thurlo v. Guiding Star LLC*, Civ. A. No. 12-889, 2012 WL 13076565, at *3 (D.N.M. Aug. 24, 2012) ("To the extent that Thurlo claims Guiding Star is a state actor based on the state court order appointing it temporary guardianship of Mariner, his argument is unpersuasive."), *report and recommendation adopted*, Civ. A. No. 12-889, 2012 WL 5378963 (D.N.M. Sept. 26, 2012).

Nor has Shermot alleged facts suggesting that the ARC Guardians were exercising a traditionally exclusive public function.  "[T]his test imposes a rigorous standard that is rarely satisfied for while many functions have been traditionally performed by governments, very few have been exclusively reserved to the State." *Robert S. v. Stetson Sch., Inc.*, 256 F.3d 159, 165-66 (3d Cir. 2001) (internal quotations and alterations omitted) (holding that private school at which plaintiff was placed as a minor by the Department of Human Services was not a state actor); *see also Leshko*, 423 F.3d at 347 (foster parents were not exercising a traditionally

9

exclusive public function and were not state actors despite contractual relationship with social services agency). Most courts that have addressed the issue have concluded that private entities performing guardianship duties are not exercising a public function absent additional facts reflecting state involvement. *Compare Taylor v. First Wyoming Bank, N.A.*, 707 F.2d 388, 390 (9th Cir. 1983) ("Here the state is not responsible for the care of the mother and is not providing for her care. The mother is in no sense a ward or responsibility of the state. The guardian, in the performance of her duties, was not participating in joint action with the state or acting for the state or serving a public function. Her actions did not constitute the exercise of power traditionally associated with sovereignty or reserved to the state."); *Sybalski v. Indep. Grp. Home Living Program, Inc.*, 546 F.3d 255, 259 (2d Cir. 2008) ("[W]e adopt the holding of the District Court that because care for the mentally disabled was neither traditionally nor exclusively reserved to the state, defendants' adoption of this function does not make their decisions in this regard properly attributable to the state." (internal quotations and alterations omitted)); *with Thomas S. v. Morrow*, 781 F.2d 367, 378 (4th Cir. 1986) (concluding that guardian was state actor when he worked with state hospital and officials from local agencies to arrange hospital placements for the plaintiff, who "from birth, ha[d] been a ward of the state or of a guardian appointed by the state"). Shermot does not allege she is a ward of the state and she has not alleged other facts to support a plausible conclusion that the ARC Guardians' actions are attributable to the state.

As Shermot has not plausibly alleged that the ARC Guardians are state actors, the Court will dismiss the § 1983 claims against them. *See Siino v. City of New York*, Civ. A. No. 14-7217, 2015 WL 4210827, at *5 (E.D.N.Y. July 9, 2015) ("Plaintiff has failed to show that Guardian Services was acting under the compulsion of the state, in joint action with the state, or in place of

the state for a public function when it took any of the actions she challenges, including the alleged failure to provide her with certain housing assistance, 'heavy duty cleaning' of her apartment, and mishandling of her property."). However, considering Shermot's *pro se* status, the Court will give her leave to amend these claims.

### C. State Claims

Liberally construing the Complaint, it is possible that Shermot also intended to bring claims under Pennsylvania law. The only independent basis for jurisdiction over such claims is 28 U.S.C. § 1332, which states that a district court can exercise subject-matter jurisdiction over a case in which "the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between . . . citizens of different States."[4]  *Id.*  Section 1332(a) requires "'complete diversity between all plaintiffs and all defendants,' even though only minimal diversity is constitutionally required.  This means that, unless there is some other basis for jurisdiction, 'no plaintiff [may] be a citizen of the same state as any defendant.'" *Lincoln Ben. Life Co. v. AEI Life, LLC*, 800 F.3d 99, 104 (3d Cir. 2015) (quoting *Lincoln Prop. Co. v. Roche*, 546 U.S. 81, 89 (2005) and *Zambelli Fireworks Mfg. Co. v. Wood*, 592 F.3d 412, 419 (3d Cir. 2010) (internal footnotes omitted)).

An individual is a citizen of the state where she is domiciled, meaning the state where she is physically present and intends to remain. *See Washington v. Hovensa LLC*, 652 F.3d 340, 344 (3d Cir. 2011). Shermot does not allege the citizenship of the parties. Rather, she provides only Pennsylvania addresses for herself and the Defendants, which suggests that she and some, if not all, of the Defendants may be Pennsylvania citizens. Accordingly, Shermot has not sufficiently

---

[4] The Court declines to exercise supplemental jurisdiction, having dismissed Shermot's federal claims.

alleged that the parties are diverse for purposes of establishing the Court's jurisdiction over any state law claims she intends to pursue.

## IV.    CONCLUSION

For the foregoing reasons, the Court will grant Shermot leave to proceed *in forma pauperis* and dismiss her Complaint.[5]  Shermot's § 1983 claims against Judge Bucci, Bell, and Feliciani will be dismissed with prejudice, because amendment of those claims would be futile. Shermot's § 1983 claims against the ARC Guardians will be dismissed without prejudice to Shermot filing an amended complaint.  Any state law claims and claims barred by the *Rooker-Feldman* doctrine are dismissed without prejudice for lack of subject matter jurisdiction.  An appropriate Order follows, which provides further instruction as to amendment.

**BY THE COURT:**

*/s/ John M. Gallagher*
**JOHN M. GALLAGHER, J.**

---

[5] The Court recognizes its obligation under Federal Rule of Civil Procedure 17(c)(2) to protect an "incompetent person who is unrepresented in an action."  As Shermot has been adjudicated incompetent by a state court, appointment of a guardian ad litem, attorney, or other representative would appear to be required in this case if it proceeded past screening under § 1915.  *See Powell v. Symons*, 680 F.3d 301 (3d Cir. 2012).  However, the Court may still conduct a screening under § 1915(e) consistent with Rule 17.  *See id.* at 307 ("In the context of unrepresented litigants proceeding *in forma pauperis,* this inquiry [under Rule 17] would usually occur after the preliminary merits screening under 28 U.S.C. § 1915A or 28 U.S.C. § 1915(e)(2)."); *see also Himchak v. Dye*, 684 F. App'x 249, 252 (3d Cir. 2017) (per curiam) ("Because, as discussed below, we agree that the District Court properly dismissed the complaint under the screening provisions, it did not abuse its discretion by not appointing a guardian to protect Himchak's interests pursuant to Fed. R. Civ. P. 17(c)."); *Dangim v. FNU LNU, USA Law Enf't*, Civ. A. No. 16-0812, 2017 WL 3149359, at *3 (D.N.M. June 2, 2017) (understanding *Powell* to convey that "a district court may sua sponte dismiss a complaint under § 1915A or § 1915(e)(2) as frivolous, malicious, or for failure to state a claim on which relief may be granted without first inquiring into a pro se litigant's mental competency to represent himself or herself under rule 17(c)(2).").