**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **LORAINE MARIE SHERMOT,** | : | |
| **Plaintiff,** | : | |
| | : | |
| **v.** | : | **CIVIL ACTION NO. 20-CV-2719** |
| | : | |
| **JAMES M. BUCCI,** *et al.*, | : | |
| **Defendants.** | : | |

## MEMORANDUM

**GALLAGHER, J.**                                                    **DECEMBER 8, 2020**

Currently before the Court is an Amended Complaint filed by Plaintiff Loraine Marie Shermot raising claims based on the performance of her guardians, doctors' evaluations of her, and her guardianship itself.  For the following reasons, the Court will dismiss the amended complaint.

### I.     FACTUAL ALLEGATIONS AND PROCEDURAL HISOTRY

Shermot's initial Complaint in this civil action named as Defendants a state judge (Judge James M. Bucci), several individuals who served as her guardian through the ARC Alliance (collectively "ARC Guardians"), an attorney for ARC, and an attorney appointed to represent Shermot at a hearing in state court (Rebecca L. Bell).  According to the Complaint, ARC was appointed to serve as guardian of Shermot and her brother in 2016.  The basis for Shermot's claims was her dissatisfaction with the performance of the ARC Guardians and the guardianship itself.  She also raised claims based on a January 28, 2020 hearing in the Orphans Court division of the Berks County Court of Common Pleas, at which Defendant Bell was appointed to represent Shermot.

In a June 30, 2020 Memorandum and Order, the Court granted Shermot leave to proceed *in forma pauperis* and dismissed her Complaint, construed as raising claims under 42 U.S.C. § 1983 and related state law claims, upon screening. *See Shermot v. Bucci*, Civ. A. No. 20-2719, 2020 WL 3542377, at *1 (E.D. Pa. June 30, 2020). First, the Court concluded that, pursuant to the *Rooker-Feldman* doctrine, it lacked jurisdiction over Shermot's claims to the extent she was "challenging the state court's 2016 guardianship order and seeking relief from that judgment." *Id.* at *2. Second, the Court concluded that Judge Bucci was entitled to absolute immunity from Shermot's § 1983 claims and that the attorneys whom she sued were not state actors amenable to suit under § 1983. *Id.* at *3. Third, the Court concluded that Shermot's allegations did not support a plausible inference that the ARC Guardians were state actors subject to liability under § 1983. *Id.* at *4-*5. Finally, to the extent Shermot was raising state claims, she had not pled a basis for the Court's jurisdiction over those claims pursuant to 28 U.S.C. § 1332. *Id.* at *5. The Court gave Shermot thirty days to file an amended complaint as to her claims against the ARC Guardians. *Id.*

Shermot did not file an amended complaint within the thirty-day time frame imposed by the Court. She did, however, file a letter with the Court indicating that she did not receive a copy of the Court's form complaint in accordance with the Court's June 30, 2020 Order. (*See* ECF Nos. 8 & 9.) Accordingly, on August 11, 2020, the Court issued an Order again directing the Clerk of Court to send Shermot a blank copy of the Court's form complaint and giving her thirty days from that date to file an amended complaint. (ECF No. 10.) The docket reflects that the Court's Order and a form complaint were mailed to Shermot on August 12, 2020. The docket also reflects that Shermot inquired via letter as to the status of her case, and that on September 30, 2020, the Clerk's Office responded with a partial copy of the docket. (ECF Nos. 11 & 12.)

On October 27, 2020, having not received an amended complaint from Shermot, the Court issued a final dismissal Order and closed the case.  (ECF No. 13.)  The dismissal Order informed Shermot that if she did not intend to stand on her Complaint, she must "move for reconsideration of this Order in accordance with Federal Rule of Civil Procedure 59(e), and attach her proposed amended complaint to that motion."  (*Id.*)

According to the docket, the Order was mailed to Shermot on November 2, 2020.  On November 27, 2020, Shermot filed her Amended Complaint, which is dated August 27, 2020.  (ECF No. 14.)  She also filed a set of additional papers in support of her Amended Complaint, docketed as "exhibits," on November 30, 2020.  (ECF No. 15.)  Although she did not move for reconsideration in accordance with the Court's dismissal Order, the Court will vacate that Order and screen Shermot's Amended Complaint.

Shermot's Amended Complaint names as Defendants the ARC Alliance ("ARC"), Gary Champlin, Ph.D (identified as employed by Wyomissing Behavior Analysts), and Susan Fralick-Ball, Psy D (identified as employed by Dresher Hill Health & Rehabilitation Center).[1]  (ECF No. 14 at 3.)[2]  Although the Defendants differ from those named in Shermot's initial Complaint, the subject matter of her claims still generally concerns alleged defects in the handling of her guardianship.

Shermot alleges that in 2016, she and her brother were living at their family property, where they had resided for over thirty years.  (*Id.* at 7.)  On November 15, 2016, Dr. Champlin

---

[1] Although Shermot listed Rebecca Bell in the caption and identified her as a Defendant in the body of the Amended Complaint, she clarifies that she is not bringing claims against Bell, but is "against the subject matter [Bell] has in her file."  (*Id.* at 3 & 4.)  Accordingly, the Court does not construe the Amended Complaint as reasserting any claims against Bell.

[2] The Court adopts the pagination assigned to Shermot's submissions by the CM/ECF docketing system.

allegedly trespassed on that property by entering illegally.  Shermot's exhibits indicate that Dr.

Champlin's visit was requested by a "longtime attorney and advocate for [Shermot and her

brother]" for "[e]valuation [of] decision-making capacity" because they were "[l]iving in

deplorable conditions."  (ECF No. 15 at 3.)  Shermot claims that Dr. Champlin, in his evaluation

of her, her brother, and the conditions at their home, wrote things that were not true including

that she had outstanding bills, was not bathing, and was using alcohol, and that her brother was

paranoid.  (ECF No. 14 at 4 & 7-10; *see also* ECF No. 15 at 3.)

At some point following Dr. Champlin's visit, ARC was appointed to serve as guardian

for Shermot and her brother.  Shermot alleges that ARC has not treated her and her brother fairly

and have failed in their guardianship obligations in various respects.  (ECF No. 14 at 11.)  In

particular, Shermot believes that ARC did not act in her interest by condoning the foreclosure

upon and sale of her family home, meaning that Shermot and her brother were required to move

to a rehabilitation center, and by allowing the loss and/or theft of personal and family property

from the home.  (*Id.* at 11-20 & 36.)  Shermot also claims that she does not require a

guardianship because she is capable of handling her own affairs.  (*Id.* at 21.)  It appears that at

some point after the sale of Shermots' family home, she resided at Dresher Hill Health &

Rehabilitation Center.  Dr. Fralick-Ball visited with Shermot at this facility and allegedly

defamed her by writing various lies about her, including that she is depressed and suffers from a

cognitive impairment.  (*Id.* at 21-24.)

As a result of the Defendants' conduct, Shermot claims to have suffered from headaches

and elevated blood pressure.  (*Id.* at 5.)  She also claims that her brother suffered a stroke "from

all the harassment."[3]  (*Id.*)  Shermot seeks to "remove the 'unjust guardianship'" and requests

monetary damages.  (*Id.*)  The Court construes her Amended Complaint as raising constitutional

claims pursuant to 42 U.S.C. § 1983 and related claims under state law.[4]

## II.     STANDARD OF REVIEW

As Shermot is proceeding *in forma  pauperis*, the Amended Complaint is subject to 28

U.S.C. § 1915(e)(2)(B)(ii), which requires the Court to dismiss the Amended Complaint if it fails

to state a claim.  Whether a complaint fails to state a claim under § 1915(e)(2)(B)(ii) is governed

by the same standard applicable to motions to dismiss under Federal Rule of Civil Procedure

12(b)(6), *see Tourscher v. McCullough*, 184 F.3d 236, 240 (3d Cir. 1999), which requires the

Court to determine whether the complaint contains "sufficient factual matter, accepted as true, to

state a claim to relief that is plausible on its face."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)

(quotations omitted).  "[M]ere conclusory statements do not suffice."  *Id.*  Moreover, "if the

court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the

action."  Fed. R. Civ. P. 12(h)(3).  As Shermot is proceeding *pro se*, the Court construes her

allegations liberally.  *Higgs v. Att'y Gen.*, 655 F.3d 333, 339 (3d Cir. 2011).

---

[3] As with the initial Complaint, to the extent Shermot brings claims on her brother's behalf, she lacks standing to pursue those claims in her own name and may not represent her brother *pro se*. *See Twp. of Lyndhurst, N.J. v. Priceline.com Inc.*, 657 F.3d 148, 154 (3d Cir. 2011) ("[A] plaintiff must assert his or her own legal interests rather than those of a third party" to have standing to bring a claim (quotations omitted)); *see also Osei-Afriyie ex rel. Osei-Afriyie v. Med. Coll. of Pa.*, 937 F.2d 876, 882-83 (3d Cir. 1991) (a pro se litigant who is not an attorney may not pursue claims on behalf of anyone other than himself including his child)  The Court will therefore dismiss without prejudice any claims raised on behalf of Shermot's brother.

[4] Shermot indicated on the form she used to file her Amended Complaint that she intends to invoke the Court's federal question jurisdiction. (*See* ECF No. 14 at 4.)  However, as she also raises allegations of trespassing and defamation, which are state law claims, the Court will liberally construe the Amended Complaint as raising state claims in addition to federal claims.

### III.   DISCUSSION

#### A. *Rooker-Feldman* Doctrine

In her Amended Complaint, Shermot asks the Court to "remove the 'unjust guardianship.'"  (ECF No. 14 at 5.)  As previously explained to Shermot in the Court's June 30, 2020 Memorandum, the Court lack jurisdiction to do that.  *Shermot v. Bucci*, 2020 WL 3542377, at *2.

Pursuant to the *Rooker-Feldman* doctrine, "federal district courts lack jurisdiction over suits that are essentially appeals from state-court judgments."  *Great W. Mining & Mineral Co. v. Fox Rothschild LLP*, 615 F.3d 159, 165 (3d Cir. 2010).  "[T]here are four requirements that must be met for the *Rooker-Feldman* doctrine to apply:  (1) the federal plaintiff lost in state court; (2) the plaintiff complains of injuries caused by the state-court judgments; (3) those judgments were rendered before the federal suit was filed; and (4) the plaintiff is inviting the district court to review and reject the state judgments."  *Id.*  To the extent Shermot is complaining of injuries caused by the state court's guardianship order, which appears to be effectively final, and seeking review and reversal of that judgment, the *Rooker-Feldman* doctrine precludes this Court from exercising jurisdiction over those aspects of her claims.  *See Stephens v. Kenney*, 802 F. App'x 715, 718 (3d Cir. 2020) (per curiam) (concluding that *Rooker-Feldman* doctrine barred "at least some aspect" of claims based on allegations that state judge improperly adjudicated plaintiff's father to be incapacitated, appointed a guardian, and approved sale of real property); *Hannivig v. Cty. of Lackawanna*, Civ. A. No. 16-1514, 2018 WL 3717135, at *3 (M.D. Pa. July 16, 2018) ("[T]o the extent that Mr. Hannivig seeks review of the final decree of the Lackawanna County Court of Common Pleas Orphans' Court Division adjudging him an incapacitated person, this Court does not have subject matter jurisdiction to review the Orphans' Court order."), *report and*

*recommendation adopted*, Civ. A. No. 16-1514, 2018 WL 3715720 (M.D. Pa. Aug. 3, 2018).

However, as the majority of Shermot's claims seek relief for injuries that do not fall within the

ambit of *Rooker-Feldman*, the Court will address those claims below.

### B.  Section 1983 Claims

The Court understands Shermot to be pursing constitutional claims pursuant to § 1983 for

violation of her constitutional rights.  "To state a claim under § 1983, a plaintiff must allege the

violation of a right secured by the Constitution and laws of the United States, and must show that

the alleged deprivation was committed by a person acting under color of state law."  *West v.

Atkins*, 487 U.S. 42, 48 (1988).  Shermot has not alleged a basis for proceeding against the

named Defendants because the Amended Complaint does not plausibly allege that they are state

actors subject to liability under § 1983.

Whether a defendant is acting under color of state law — i.e., whether the defendant is a

state actor — depends on whether there is "such a close nexus between the State and the

challenged action' that seemingly private behavior may be fairly treated as that of the State

itself."  *Leshko v. Servis*, 423 F.3d 337, 339 (3d Cir. 2005) (internal quotations omitted).  "To

answer that question, [the United States Court of Appeals for the Third Circuit has] outlined

three broad tests generated by Supreme Court jurisprudence to determine whether state action

exists:  (1) whether the private entity has exercised powers that are traditionally the exclusive

prerogative of the state; (2) whether the private party has acted with the help of or in concert with

state officials; and (3) whether the state has so far insinuated itself into a position of

interdependence with the acting party that it must be recognized as a joint participant in the

challenged activity."  *Kach v. Hose*, 589 F.3d 626, 646 (3d Cir. 2009) (internal quotations and

alteration omitted).  "Action taken by private entities with the mere approval or acquiescence of

7

the State is not state action." *Am. Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 52 (1999).

Rather, to support a finding of state action, "the government must be 'responsible for the specific

conduct of which the plaintiff complains.'" *Borrell v. Bloomsburg Univ.*, 870 F.3d 154, 160 (3d

Cir. 2017) (quoting *Blum v. Yaretsky*, 457 U.S. 991, 1004 (1982)).

The doctors named as Defendants both appear to be private physicians who evaluated

Shermot on different occasions. No allegations in the Amended Complaint tie them to state

action of any kind. Rather, Shermot alleges that Dr. Champlin trespassed on her property and

defamed her in 2016,[5] and that Dr. Fralick-Ball defamed her following a subsequent evaluation.

These allegations do not support a plausible inference of state action.

Shermot also has not plausibly alleged that ARC is a state actor subject to liability under

§ 1983. ARC is a private entity that provides guardianship and other services. *The Arc Alliance*,

https://thearcalliance.org/our-history-2/ ("The Arc Alliance is made up of five related

corporations: The Arc Alliance, The Arc Alliance Advocacy Services, The Arc Alliance

Children's Services, The Arc Alliance Guardianship Services, and The Arc Alliance

Foundation.") (last visited December 8, 2020). As explained in the Court's June 30, 2020

Memorandum with respect to ARC employees, the fact that the ARC was appointed by the state

court to serve as Shermot's guardian does not equate to a conclusion that ARC is a state actor.

*See Smith v. Wood*, 649 F. Supp. 901, 906 (E.D. Pa. 1986) (family members who invoked

Pennsylvania's guardianship laws resulting in a ruling that plaintiff was incompetent to manage

his estate were not state actors "[m]erely because a judicial determination was required"); *see*

---

[5] Additionally, Pennsylvania's two-year statute of limitations applies to these claims. *See* 42 Pa. Cons. Stat. § 5524; *Wallace v. Kato*, 549 U.S. 384, 387 (2007). Since Shermot's claims against Dr. Champlin are based on events that took place in 2016, and since she did not file her lawsuit until 2020, these claims appear to be time barred.

*also Thurlo v. Guiding Star LLC*, Civ. A. No. 12-889, 2012 WL 13076565, at *3 (D.N.M. Aug.

24, 2012) ("To the extent that Thurlo claims Guiding Star is a state actor based on the state court

order appointing it temporary guardianship of Mariner, his argument is unpersuasive."), *report*

*and recommendation adopted*, Civ. A. No. 12-889, 2012 WL 5378963 (D.N.M. Sept. 26, 2012);

*Runge v. Kelly*, Civ. A. No. 05-10849, 2006 WL 167497, at *2 (D. Mass. Jan. 23, 2006)

(dismissing § 1983 claims against private attorney who procured order appointing him as

plaintiff's guardian because "[a] private party's abuse of a valid state procedure does not . . .

implicate state action").  Furthermore, to the extent ARC was involved in court proceedings

concerning Shermot or obtained judicial approval for actions with which Shermot disagreed,

"merely resorting to the courts and being on the winning side of a lawsuit does not make a party

a co-conspirator or a joint actor with the judge." *Dennis v. Sparks*, 449 U.S. 24, 28 (1980);

*Stephens*, 802 F. App'x at 720 (conclusory allegations that guardian conspired with judge to

deprive plaintiff of due process did not state a basis for state action); *Kennedy v. Glassman*, Civ.

A. No. 11-51, 2011 WL 666248, at *3 (N.D. Fla. Feb. 14, 2011) (dismissing, pursuant to §1915,

claims against attorneys who participated in guardianship proceeding because they were not state

actors), *report and recommendation adopted*, Civ. A. No. 11-51, 2011 WL 1374983 (N.D. Fla.

Apr. 12, 2011).

        Nor has Shermot alleged facts suggesting that ARC was exercising a traditionally

exclusive public function when acting as her guardian.  "[T]his test imposes a rigorous standard

that is rarely satisfied for while many functions have been traditionally performed by

governments, very few have been exclusively reserved to the State." *Robert S. v. Stetson Sch.,*

*Inc.*, 256 F.3d 159, 165-66 (3d Cir. 2001) (internal quotations and alterations omitted) (holding

that private school at which plaintiff was placed as a minor by the Department of Human

Services was not a state actor); *see also Leshko*, 423 F.3d at 347 (foster parents were not exercising a traditionally exclusive public function and were not state actors despite contractual relationship with social services agency).  As previously explained, most courts that have addressed the issue have concluded that private entities performing guardianship duties are not exercising a public function absent additional facts reflecting state involvement.  *Compare Taylor v. First Wyoming Bank, N.A.*, 707 F.2d 388, 390 (9th Cir. 1983) ("Here the state is not responsible for the care of the mother and is not providing for her care.  The mother is in no sense a ward or responsibility of the state.  The guardian, in the performance of her duties, was not participating in joint action with the state or acting for the state or serving a public function.  Her actions did not constitute the exercise of power traditionally associated with sovereignty or reserved to the state."); *Sybalski v. Indep. Grp. Home Living Program, Inc.*, 546 F.3d 255, 259 (2d Cir. 2008) ("[W]e adopt the holding of the District Court that because care for the mentally disabled was neither traditionally nor exclusively reserved to the state, defendants' adoption of this function does not make their decisions in this regard properly attributable to the state." (internal quotations and alterations omitted)); *with Thomas S. v. Morrow*, 781 F.2d 367, 378 (4th Cir. 1986) (concluding that guardian was state actor when he worked with state hospital and officials from local agencies to arrange hospital placements for the plaintiff, who "from birth, ha[d] been a ward of the state or of a guardian appointed by the state").  Because Shermot again does not allege she is a ward of the state and she has not alleged other facts to support a plausible conclusion that ARC's actions are attributable to the state, the Court will dismiss the § 1983 claims based on the handling of her guardianship.  *See Siino v. City of New York*, Civ. A. No. 14-7217, 2015 WL 4210827, at *5 (E.D.N.Y. July 9, 2015) ("Plaintiff has failed to show that Guardian Services was acting under the compulsion of the state, in joint action with the state, or

in place of the state for a public function when it took any of the actions she challenges, including the alleged failure to provide her with certain housing assistance, 'heavy duty cleaning' of her apartment, and mishandling of her property.").

### C.  State Law Claims

To the extent Shermot is raising claims under state law for assorted torts, the only independent basis for jurisdiction over such claims is 28 U.S.C. § 1332, which states that a district court can exercise subject-matter jurisdiction over a case in which "the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between . . . citizens of different States."[6]  *Id.*  Section 1332(a) requires "'complete diversity between all plaintiffs and all defendants,' even though only minimal diversity is constitutionally required. This means that, unless there is some other basis for jurisdiction, 'no plaintiff [may] be a citizen of the same state as any defendant.'" *Lincoln Ben. Life Co. v. AEI Life, LLC*, 800 F.3d 99, 104 (3d Cir. 2015) (quoting *Lincoln Prop. Co. v. Roche*, 546 U.S. 81, 89 (2005) and *Zambelli Fireworks Mfg. Co. v. Wood*, 592 F.3d 412, 419 (3d Cir. 2010) (internal footnotes omitted)).

An individual is a citizen of the state where she is domiciled, meaning the state where she is physically present and intends to remain.  *See Washington v. Hovensa LLC*, 652 F.3d 340, 344 (3d Cir. 2011).  Shermot again does not allege the citizenship of the parties.  Rather, she provides only Pennsylvania addresses for herself and the Defendants, which suggests that she and some, if not all, of the Defendants may be Pennsylvania citizens.  Accordingly, Shermot has not sufficiently alleged that the parties are diverse for purposes of establishing the Court's jurisdiction over any state law claims she intends to pursue.

---

[6] The Court declines to exercise supplemental jurisdiction, having dismissed Shermot's federal claims.

## IV.    CONCLUSION

For the foregoing reasons, the Court will dismiss Shermot's Amended Complaint.[7]   Any state law claims and claims barred by the *Rooker-Feldman* doctrine are dismissed without prejudice for lack of subject matter jurisdiction.  Shermot's remaining § 1983 claims are dismissed with prejudice because further amendment of those claims would be futile.  An appropriate Order follows.

**BY THE COURT:**

*/s/ John M. Gallagher*
**JOHN M. GALLAGHER, J.**

---

[7] The Court again recognizes its obligation under Federal Rule of Civil Procedure 17(c)(2) to protect an "incompetent person who is unrepresented in an action."  However, the Court may still conduct a screening under § 1915(e) consistent with Rule 17.  *See Powell v. Symons*, 680 F.3d 301, 307 (3d Cir. 2012) ("In the context of unrepresented litigants proceeding *in forma pauperis,* this inquiry [under Rule 17] would usually occur after the preliminary merits screening under 28 U.S.C. § 1915A or 28 U.S.C. § 1915(e)(2)."); *see also Himchak v. Dye*, 684 F. App'x 249, 252 (3d Cir. 2017) (per curiam) ("Because, as discussed below, we agree that the District Court properly dismissed the complaint under the screening provisions, it did not abuse its discretion by not appointing a guardian to protect Himchak's interests pursuant to Fed. R. Civ. P. 17(c)."); *Dangim v. FNU LNU, USA Law Enf't*, Civ. A. No. 16-0812, 2017 WL 3149359, at *3 (D.N.M. June 2, 2017) (understanding *Powell* to convey that "a district court may sua sponte dismiss a complaint under § 1915A or § 1915(e)(2) as frivolous, malicious, or for failure to state a claim on which relief may be granted without first inquiring into a pro se litigant's mental competency to represent himself or herself under rule 17(c)(2).").